IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY CONTRERAS,<br><br>    Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C 06-6017 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Rosemary Contreras ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue[1] ("Defendant"), denying her claim for disability insurance benefits. Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. ## 10, 13.) Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment for the reasons set forth below.

## II. BACKGROUND

**A.   Procedural Background**

In September 2002[2], Plaintiff filed her application for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Plaintiff initially alleged disability beginning June 1, 1999, but subsequently amended her alleged onset date to July 20, 2000.

---

[1]   Michael J. Astrue is substituted for his predecessor, Jo Anne Barnhart, as Commissioner of the Social Security Administration.

[2]   The exact filing date is not clear from the record before the Court, but both parties agree that Plaintiff filed her application at this time. (Def. Mot. at 1:14; Pl. Mot. at 5:3.)

(Administrative Record ("AR") 84, 87, 97, 106, 360.)  Plaintiff alleged disability due to depression, pain in her back, neck, legs and arms, extreme headaches, fatigue, and fibromyalgia.  (AR 97.)  Plaintiff was 33 years old when she filed her application  (AR 84.)  She had a high school education and had previous experience as a receptionist, chiropractor assistant, mortgage loan processor, and real estate firm manager.  (AR 23, 98, 103.)

After the Social Security Administration denied her application at the initial and reconsideration levels, (AR 33, 34, 40-43, 47-50), Plaintiff sought review by an Administrative Law Judge ("ALJ").  (AR 53.)  ALJ Michael Blume conducted an initial hearing on October 28, 2004, at which Plaintiff and vocational expert Dennis Contreras testified.  (AR 344-75.)  At the end of the hearing, the ALJ sent Plaintiff for an additional psychological consultative examination and held the record open to receive additional medical records.  (AR 375.)  On May 26, 2005, ALJ Blume conducted a second hearing during which he took testimony from Plaintiff, medical expert Gorge Damian B. Minor, M.D., and vocational expert Malcolm Bredzinski, M.A.  (AR 376-405.)

On August 23, 2005, ALJ Blume found that Plaintiff was not disabled under the Act because she could perform her past relevant work.  (AR 22-30.)  ALJ Blume's decision became the final decision of the Commissioner when the Appeals Council declined to review it on July 24, 2006.  (AR 7-9.)

**B.     Summary of Medical History**

The Court finds that ALJ Blume fairly and accurately summarized the facts and medical history in his decision.  (AR 22-30.)  Accordingly, the Court shall only discuss specific facts as necessary.

**C.     The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The sequential inquiry is terminated when a question is answered affirmatively or negatively in such a way that a decision can be made that the claimant is or is not disabled.  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, ALJ Blume determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, July 20, 2000. (AR 29.)

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Act.[3] If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, ALJ Blume determined that the evidence established that Plaintiff suffers from "an impingement syndrome of both shoulders, mild degenerative joint disease of the right shoulder, depression, obesity, degenerative disc disease of the lumbar spine and migraine headaches." (AR 29.) Although he found that none of the impairments were severe on their own, ALJ Blume determinated that "[i]n combination, the medically documented disorders are 'severe.'" (AR 29.)

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. "If a claimant's impairment either meets the listed criteria for the diagnosis *or* is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Here, ALJ Blume determined that Plaintiff's impairments did not meet the criteria, finding that the "medically documented disorders are not attended by clinical and laboratory findings that meet or equal any listed impairment," and that as to her medically-documented disorders that account for Plaintiff's subjective complaints, "the alleged intensity, persistence and functionally limiting effects of the

---

[3] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-54 (1987). "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id.* at 158.

3

symptoms are not entirely credible."  (AR 29.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's Residual Functional Capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(e).  Residual functioning capacity refers to what an individual can still do in a work setting, despite limitations caused by medically determinable impairments.  20 C.F.R. § 416.945(a).  In assessing an individual's RFC, the ALJ must consider his or her symptoms (including pain), signs, and laboratory findings, together with other evidence.  20 C.F.R. § 404, Subpt. P, App.2 § 200.00(c).  Here, ALJ Blume determined that Plaintiff has the RFC to "occasionally lift up to twenty pounds, frequently lift and/or carry up to ten pounds, stand and/or walk for six hours in an eight hour day, and sit for six hours in an eight hour day."  (AR 29.)  ALJ Blume limited Plaintiff to "occasional bending, stooping and crouching" and precluded her "from overhead work with the left upper extremity."  (AR 29.)

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).  Here, ALJ Blume determined that Plaintiff is capable of performing past relevant work as a receptionist, mortgage loan processor, and real estate firm manager.  (AR 29.)  As such, ALJ Blume determined that Plaintiff is not disabled as defined by the Act.  (AR 29.)

### III.  LEGAL STANDARD

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a mere scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The court is required to review the administrative record as a whole, weighing both the evidence that

4

supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Further, determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id*. Additionally, even if the Court determines that the ALJ erred in making a finding, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (citation omitted).

## IV.  ISSUES

Plaintiff seeks reversal of the Commissioner's denial of disability insurance benefits, arguing that:

(1)   the ALJ's finding that Plaintiff's fybromyalgia syndrome and degenerative disc disease of the lumbar spine were not severe is not supported by substantial evidence;

(2)   the ALJ improperly rejected the opinion of Plaintiff's treating physician;

(3)   the ALJ improperly discounted Plaintiff's credibility;

(4)   the ALJ's RFC findings were not proper; and

(5)   the ALJ's determinative Step Four findings were not properly reached.

(Pl.'s Mot. Summ. J. 6.)

## V.  DISCUSSION

**A.  Whether the ALJ Properly Determined that Fibromyalgia was not a "Medically Determinable Impairment" and Degenerative Disc Disease was not a "Severe" Impairment**

1.  <u>Fibromyalgia</u>

In his findings, ALJ Blume found that the medical evidence did not adequately document the number and location of tender points to establish fibromyalgia. (AR 26.) ALJ Blume also found that Plaintiff's "back disorder does not seriously compromise the capacity for basic work functions, as the medical evidence reflects only intermittent complaints of back pain and fails to show that the back symptoms are sufficiently persistent to interfere with basic work functions." (AR 24-25.) Plaintiff argues that the ALJ's findings are contrary to most of the evidence, and are not supported

5

by substantial evidence in the record as a whole.

      The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). A "medically determinable impairment" under the Social Security Act is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (discussing standard for establishing a medically determinable impairment). The Ninth Circuit has upheld the Commissioner's interpretation of this provision of the Act as expressed in Social Security Ruling ("SSR") 96-4p (1996 WL 374187). *Ukolov*, 420 F.3d at 1005 n.2. SSR 96-4p requires a determination of an impairment based on medical evidence alone, or medical evidence in combination with a claimant's symptoms, but never solely on the basis of symptoms. SSR 96-4p; *Ukolov*, 420 F.3d at 1005; *see also* 20 C.F.R § 404.1528 (2006) (defining terms "signs" and "symptoms").

      Here, the Court finds that the ALJ's findings are supported by substantial evidence and free of legal error. Although Plaintiff received treatment for fibromyalgia from Ragiv K. Dixit, M.D., none of the consultative examining or reviewing physicians confirmed this diagnosis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1995 (9th Cir. 2004) (holding that an opinion of a treating source "is not binding on an ALJ with respect to the existence of an impairment" and that the ALJ may rely on consultative and reviewing opinions). In particular, Dr. Minor, the medical expert at the May 26, 2005 hearing, testified that Dr. Dixit's records did not include specific, objective evidence upon which to base the diagnosis. (AR 386-88.) The ALJ properly relied upon this testimony as it was consistent with the evidence from Dr. Dixit's treatment notes and other examination reports. (AR 23.) *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (holding opinion of non-examining physician may be substantial evidence when consistent with other evidence in record).

Further, ALJ Blume also noted that Dr. Dixit's progress records included signs of trigger points, but not the specific number and locations recognized by the American College of Rheumatology. (AR 23.) The Ninth Circuit has also recognized this trigger point requirement, noting that 11 out of 18 trigger points are necessary for a diagnosis of fibromyalgia under accepted medical criteria. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). Dr. Dixit's treating notes do not identify any specific trigger points, their number, or their general location in the body. (AR 215-27, 276-88, 334-37.) Although Plaintiff correctly argues that Dr. Minor did not review the treatment record from Dr. Dixit submitted post-hearing, (AR 334), in which Dr. Dixit conclusively states that Plaintiff meets the "ACR criteria for fibromyalgia," this general statement is insufficient to show the clinical basis for Dr. Dixit's diagnostic conclusion. *See* 20 C.F.R. § 404.1528; SSR 96-4p; *Ukolov*, 420 F.3d at 1005. Moreover, Dr. Dixit's 2005 statement is inadequate to establish an impairment prior to the expiration of Plaintiff's insured status on December 31, 2002. *See Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1998) (finding that examination more than one year after expiration of insured status was inadequate to establish disability).

Finally, ALJ Blume and Dr. Minor also considered the opinion of examining orthopedist John G. Costouros, M.D. (AR 24-25.) Dr. Costouros' March 31, 2003 examination revealed no point tenderness of the cervical spine; diffuse paralumbar tenderness of the lumbosacral spine, but no obvious spasm, deformity or trigger points; and positive impingement signs of the bilateral shoulders. (AR 240.) Dr. Costouros diagnosed bilateral shoulder subacromial impingement, cervical spondylosis, and mechanical low back pain, but not fibromyalgia. (AR 240.) ALJ Blume properly concluded that Dr. Minor's testimony was consistent with this evidence. *See Morgan*, 169 F.3d at 602-03; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Accordingly, ALJ Blume properly determined that Plaintiff's fibromyalgia was not a medically determinable impairment based on substantial evidence in the record.

2.      <u>Degenerative Disc Disease</u>

As to Plaintiff's alleged degenerative disc disease of the lumbar spine, ALJ Blume noted that

Plaintiff complained of back pain, but found only "minimally abnormal findings of tenderness and some limitation of motion." (AR 24.) He concluded that Plaintiff's back disorder "does not seriously compromise the capacity for basic work functions, as the medical evidence reflects only intermittent complaints of back pain and fails to show that the back symptoms are sufficiently persistent to interfere with basic work functions." (AR 24-25.) ALJ Blume also noted that the medical records reflect no specific ongoing medical regimen for the back complaint. (AR 25.) Specifically, the ALJ considered Dr. Dixit's treatment records, which refer to a history of degenerative changes in the lumbar spine, intermittent complaints of low back pain, and limited motion in the back but report normal neurological findings. (AR 216-27, 277-88.) Dr. Dixit recommended weight reduction and aerobic conditioning. (AR 217.)

ALJ Blume also considered Dr. Costouros' March 31, 2003 consultative examination report. (AR 239-41.) Dr. Costouros found no point tenderness of the cervical spine, paralumbar tenderness of the lumbosacral spine with no obvious spasm, deformity, or trigger points, and diagnosed mechanical low back pain. (AR 240.) Dr. Costouros found that Plaintiff had no environmental or manipulative limitations, and only occasional postural restrictions to bending, stooping or crouching. (AR 241.) He further determined that Plaintiff had the ability to stand and walk for six hours of an eight hour day, sit for six hours with breaks every two hours, and the ability to lift 20 pounds occasionally and 10 pounds frequently with restrictions in overhead lifting. (AR 241.)

The ALJ's findings also consider an April 28, 2005 report from Joseph A. Narloch, M.D., which disclosed limitation of motion in the back and negative straight leg raising. (AR 324.) Dr. Narloch diagnosed degenerative disc disease and counseled Plaintiff on the long-term benefits of an ongoing weight loss program, as well as continuing strength and conditioning training. (AR 324.)

While the ALJ recognized that Plaintiff had complaints of back pain, he reasonably interpreted the medical evidence to conclude that it was not sufficiently severe to interfere with basic work functions during the relevant period. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ's role is to interpret the medical evidence). Thus, the Court finds that ALJ Blume's decision is supported by substantial evidence which a reasonable person could accept as

1  adequate. Accordingly, the ALJ's decision is rational and the Court must uphold the decision.
2  *Magallanes*, 881 F.2d at 750.

**B.     Whether the ALJ Improperly Rejected the Opinion of Plaintiff's Treating Physician**

Next, Plaintiff argues that ALJ Blume improperly rejected Dr. Dixit's opinion that Plaintiff was disabled by her fibromyalgia and lumbar degenerative disc disease. (AR 287.) In his decision, ALJ Blume gave Dr. Dixit's opinion "minimal weight," finding that he failed to provide abnormal medical findings consistent with his opinion, and that Dr. Dixit prescribed only conservative medical attention, which the ALJ found inconsistent with a significant loss of physical ability to work. (AR 27.)

When the opinion of a treating or an examining doctor is not contradicted by another doctor, the ALJ may reject that opinion only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, even if contradicted by another doctor, that opinion can still be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. The ALJ is responsible for resolving any such conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. Similarly, the ALJ is responsible for resolving ambiguities in the evidence. *Id.* An examining physician's findings are entitled to the same weight when the examination is obtained by the Commissioner as when it is procured by the claimant. *Lester*, 81 F.3d at 832.

In considering medical opinions, the ALJ is required to give weight to medical opinions discussing the "nature and severity of [the claimant's] impairments," but not to a physician's ultimate opinion regarding a claimant's disability or employability status. *See* 20 C.F.R. §§ 416.927(a)(2), 416.927(e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

Here, the Court finds that the ALJ provided specific and legitimate reasons for according minimal weight to Dr. Dixit's opinion. First, ALJ Blume concluded that Dr. Dixit's conclusory opinion of disability was inconsistent with the treatment notes and objective findings. (AR 27.) An ALJ properly rejects a physician's opinion that "lack[s] substantive medical findings to support her

9

conclusion." *Batson*, 359 F.3d at 1195. Specifically, ALJ Blume noted that Dr. Dixit "prescribed only conservative medical attention that is inconsistent with a significant loss of physical ability for work." (AR 27.) Dr. Dixit prescribed conservative treatment measures, including Advil "as needed," periodic cortisone injections for Plaintiff's shoulder condition, and Paxil for depression. (AR 216-25.) Further, as noted above, Dr. Dixit recommended weight reduction and aerobic conditioning, (AR 217), prescriptions which are at odds with his statement that Plaintiff could perform no work activity. *Rollins*, 261 F.3d at 856 (holding medical opinion of disability properly rejected where descriptions and recommendations were not at level "one would expect to accompany a finding that [the claimant] was totally disabled under the Act").

Second, ALJ Blume found that Plaintiff's daily activities did not support Dr. Dixit's opinion. (AR 27.) The ALJ noted that Plaintiff's daily activities include a variety of household chores, social interaction, cooking, and caring for her children. (AR 27.) These activities include transporting her kids to and from school, washing dishes, laundry with some help, shopping with assistance, sweeping, preparing dinner as a family, occasionally socializing with friends and family, and e-mailing without any concentration problems. (AR 27-28.)

Third, ALJ Blume also relied on the independent examination findings of Dr. Costouros and the opinion of Dr. Minor. (AR 23-27.) As discussed above, ALJ Blume considered Dr. Costouros' March 31, 2003 consultative examination report, in which Dr. Costouros determined that Plaintiff had the ability to stand and walk for six hours of an eight hour day, sit for six hours with breaks every two hours, and the ability to lift 20 pounds occasionally and 10 pounds frequently with restrictions in overhead lifting. (AR 241.) The ALJ also considered the testimony of Dr. Minor, who noted that Dr. Dixit's progress records included signs of trigger points, but not the specific number and locations required, and that the x-ray evidence of neuroforaminal encroachment of the L5 and S1 nerve roots were normal, given the lack of a clinical correlation such as a dermatomal pattern of reflex loss, decreased sensation, or weakness. (AR 23.)

As these independent findings are inconsistent with Dr. Dixit's findings, Plaintiff's daily activities are inconsistent with Dr. Dixit's findings, and Dr. Dixit's own treatment notes and

objective findings are inconsistent with his disability opinion, the Court finds that ALJ Blume properly rejected Dr. Dixit's opinion based on specific and legitimate reasons.

**C.      Whether the ALJ Improperly Discounted Plaintiff's Credibility**

In his decision, ALJ Blume found that, "When considering the evidence as a whole, I find that claimant's testimony as to the severity of her symptoms is not entirely credible," and that "the alleged intensity, persistence and functionally limiting effects of the subjective complaints are not entirely credible."  (AR 27, 28.)  Plaintiff argues that the ALJ's finding is improper because: (1) he acknowledged none of her written statements; (2) although he pointed to Plaintiff's statements about housework and other activities, such activities are not indicative of the ability to sustain competitive work; and (3) he ignored or failed to acknowledge any consideration of the Daily Activities Questionnaire completed by Plaintiff's husband, Gary Contreras, and that such third party evidence is critical here because it establishes that Plaintiff is not self sufficient in chores or grooming, and she has trouble concentrating and completing tasks.  (Pl.'s Mot. Summ. 12-13.)

A two step analysis applies at the administrative level when considering a claimant's subjective credibility regarding her pain symptoms. *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce the claimant's symptoms.  SSR 96-7p (1996 WL 374186).  Once the claimant meets this burden, the second step of the analysis requires the ALJ to evaluate the intensity, persistence, and limiting effects of the claimant's pain to determine the extent to which the symptoms limit Plaintiff's capacity for work.  *Smolen*, 80 F.3d at 1281. However, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

"Pain is subjective in both existence and degree." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)).  "Yet despite the inability to measure it objectively, it can have 'severe debilitating effects' - even to the point of disabling a

11

person who does not meet or equal the impairments listed in Appendix 1 and who would not objectively be expected to experience pain to the degree subjectively expressed." *Johnson*, 60 F.3d at 1433 (citing 20 C.F.R. § 404.1545(e) ("pain or other symptoms may cause a limitation of function beyond ... the anatomical, physiological or psychological abnormalities considered alone")). Thus, the ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision." *Johnson*, 60 F.3d at 1433 (citing *Fair*, 885 F.2d at 602). "These findings must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole." *Johnson*, 60 F.3d at 1433. Such specificity is crucial so as to enable effective judicial review. *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing. *Fair*, 885 F.2d at 604.

Here, the Court finds that ALJ Blume properly discounted Plaintiff's credibility as to her subjective complaints because her allegations regarding the intensity, persistence, and functionally limiting effects of her pain, migraines, and fatigue were not supported by the record as a whole. First, the ALJ considered the medical opinions of Drs. Costouros, Minor, and the state agency physicians that Plaintiff could perform sedentary work despite her limitations. (AR 27, 239-41, 259-74, 384-98); *see* 20 C.F.R. § 404.1529(c)(1)-(2) (requiring consideration of medical history, medical signs and laboratory findings, and objective medical evidence in evaluating the extent and impact of alleged pain); *Batson*, 359 F.3d at 1196 (holding ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (concluding doctor's opinion that plaintiff could perform sedentary work was valid, specific

reason supporting ALJ's rejection of claimant's excess pain complaints).

Second, the ALJ considered the inconsistencies between Plaintiff's testimony regarding pain and her other testimony. Although Plaintiff testified regarding totally incapacitating headaches four times per week, lasting 24 hours each, ALJ Blume noted that Plaintiff also testified that she drove her children to and from school five days per week. (AR 28, 348-49, 362-64.) ALJ Blume also considered the inconsistency between Plaintiff's alleged concentration difficulties and her admitted lack of difficulty when using the computer for email, (AR 27, 359-61), as well as her ability to maintain functioning with respect to daily activities, such as light household chores, cooking, shopping with assistance, and her ability to maintain social functioning. (AR 28). *See, e.g., Morgan*, 169 F.3d at 600 (holding ALJ properly concluded subjective complaints were exaggerated where claimant fixed meals, did laundry, worked in yard and occasionally cared for friend's child); *Curry*, 925 F.2d at 1130 (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries" inconsistent with claim that she was unable to perform all work activity).

The Court does note, however, that ALJ Blume failed to address Mr. Contreras' written questionnaire. "The Secretary, however, need not discuss *all* evidence presented to [him]. Rather, [he] must explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Here, the Court finds that Mr. Contreras' statements were extremely general and did not provide any detail greater than Plaintiff's statements or testimony. On January 16, 2003, Gary Contreras completed a Daily Activities Questionnaire regarding Plaintiff's activities. (AR 117-22.) Mr. Contreras corroborated that Plaintiff took the children to and from school, had difficulty sleeping, cooked, received assistance with cooking, shopping and cleaning, had "no difficulties" with social functioning, visited family and friends once a week, had difficulty concentrating due to migraines, and very often tired quickly when attempting chores. (AR 117-22.) These statements are largely cumulative and are not outcome determinative. As such, even if the ALJ were required to include them in his decision, the Court finds that their omission is harmless error. *Stout v. Comm'r*, 454 F.3d

13

1050, 1055 (9th Cir. 2006) (error is harmless where it "was inconsequential to the ultimate nondisability determination").

Accordingly, the Court finds that ALJ Blume made specific findings justifying a decision to disbelieve Plaintiff's allegations of excess pain, and those findings are supported by substantial evidence in the record. The Court must not engage in second-guessing. *Fair*, 885 F.2d at 604.

**D.     Whether the ALJ's RFC Findings were Proper**

Plaintiff next argues that ALJ Blume's RFC findings were improper. However, she provides no separate legal basis for this argument. Instead, Plaintiff contends that the RFC is improper based on the arguments above - namely, "[b]ecause of the errors in rejecting doctor's opinions and symptoms reported." (Pl.'s Mot. Summ. 13.)

The ALJ found that Plaintiff had the RFC to occasionally lift up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. (AR 29.) He further found that Plaintiff was limited to occasional bending, stooping and crouching, and precluded from overhead work with the left upper extremity. (AR 29.) ALJ Blume explained that these limits were derived from the documented medical conditions of impingement syndrome of both shoulders, degenerative changes in the shoulder, and obesity which aggravated musculoskeletal pain and Plaintiff's low back symptoms. (AR 26.) Thus, the Court finds that the ALJ took into account those limitations for which there was support in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Moreover, as discussed above, the ALJ properly relied on the independent examination findings of Drs. Costouros and Minor. Accordingly, the Court finds the ALJ's RFC findings proper.

**E.     Whether the ALJ Properly Determined at Step Four that Plaintiff Could Perform Her Past Relevant Work**

Finally, Plaintiff argues that ALJ Blume erred at the fourth step of the analysis in finding that she could perform her past relevant work. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Although the burden of proof lies with the

14

claimant, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62.[4] *See* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. This is done by looking at the RFC and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61 (1982 WL 31387). This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

Plaintiff first argues that the ALJ's RFC findings were improper because he used the RFC findings in his determination, and those findings are inaccurate. However, as discussed above, ALJ Blume's RFC findings were proper and, therefore, this argument is without merit.

Plaintiff next argues that she could not perform her past work because it required stooping. At the hearing before ALJ Blume, vocational expert Dennis Contreras testified that Plaintiff's past relevant work included work as a receptionist, chiropractic assistant, mortgage loan processor, and real estate firm manager. (AR 371-72.) He further testified that, pursuant to the descriptions of these positions in the *Dictionary of Occupational Titles* ("DOT"), a person with Plaintiff's functional limitations could perform her past work of receptionist (DOT No. 237.367-038, 1991 WL 672192), mortgage loan processor (DOT No. 249.362-022, 1991 WL 672319), and real estate firm manager (DOT No. 186.167-066, 1991 WL 671334). (AR 371-72.) The vocational expert testified that the receptionist and mortgage loan processor jobs were performed at the sedentary exertional level, and the real estate firm manager was performed at the light exertional level. (AR 371-72.) *See* 20 C.F.R. § 404.1567 (defining "sedentary" and "light"). The Court finds that ALJ Blume properly relied on this testimony in determining that Plaintiff could return to her past relevant work. *See* 20

---

[4] For the purposes of this case, Social Security Rulings are "binding on all components of the Social Security Administration . . ." 20 C.F.R. §§ 402.35(b)(1)- (2); *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984).

C.F.R. § 404.1560(b)(2) (permitting use of vocational specialist evidence); *Pinto*, 249 F.3d at 845 (testimony by a vocational expert about a claimant's past relevant work provides a sufficient basis for the ALJ's analysis).

As for Plaintiff's argument that she could not perform her past relevant work because it required stooping, the DOT provisions for Plaintiff's past relevant jobs all indicate that no stooping is required. DOT No. 237.367-038, 1991 WL 672192; DOT No. 249.362-022, 1991 WL 672319; DOT No. 186.167-066, 1991 WL 671334. Accordingly, the Court finds no conflict between the DOT provisions and the vocational expert's testimony, and ALJ Blume properly determined that Plaintiff could perform her past relevant work.

## VI.  CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 27, 2009

_____
MARIA-ELENA JAMES
United States Magistrate Judge